UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DAN FREEMAN | CIVIL ACTION |
| VERSUS | NO. 14-2257 |
| PHILLIPS 66 COMPANY, *et al.* | SECTION "N" (4) |

## ORDER & REASONS

Now before the Court is Plaintiff's, Dan Freeman ("Freeman"), "Motion to Remand" (Rec. Doc. 9). Defendant, Chevron Phillips Chemical Company LP, as successor in interest to Phillips Petroleum Company f/k/a Cononoco Phillips and n/k/a Phillips 66 Company formerly d/b/a Drilling Specialties Company, ("CPCC"), filed a response in opposition (Rec. Doc. 10). Freeman filed a reply. (Rec. Doc. 15). For the reasons stated herein,

**IT IS ORDERED** that Freeman's "Motion to Remand" (**Rec. Doc. 9**) is **GRANTED**, and the matter is hereby **REMANDED** to the Civil District Court for the Parish of Orleans, State of Louisiana.

**I. Background**

Freeman filed his original petition in the Civil District Court for the Parish of Orleans, State of Louisiana against four Jones Act defendants and several non-Jones Act defendants, alleging damages resulting from exposure to asbestos through contact with drilling mud additives. (Rec. Doc. 1). Approximately three years into this litigation, Freeman filed his First Supplemental and

Amending Petition for Damages, which added general maritime claims and a new defendant, North River Insurance Company.  CPCC and North River each filed separate notices of removal in response to the amended petition.  North River, but not CPCC, asserted that the Outer Continental Shelf Lands Act ("OCSLA") applied as its basis for removal.  The two matters were consolidated before this Court, and Freeman filed a Motion to Remand.  The Court granted the motion finding, in particular, that North River had not shown, by a preponderance of the evidence, that the OCSLA applied. (Rec. Doc. 48 Civ. Action No. 14-CV-311).  Since then, the parties have conducted discovery, which included taking deposition testimony, pursuing the action in state court.  On September 30, 2014, based on the receipt of Greg Perkin's, plaintiff's expert, deposition testimony, CPCC filed its second notice of removal alleging that the testimony conferred federal jurisdiction under the OCSLA. (Rec. Doc. 1).  Specifically, CPCC argues that the testimony is "other paper" for purposes of 28 U.S.C. 1446(b)(3).  Now before the Court is Freeman's Motion to Remand. (Rec. Doc. 9).

**II. Law and Analysis**

Federal courts are courts of limited jurisdiction, and removal statutes are to be strictly construed. Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 61 S.Ct. 868, 85 L.Ed. 1214 (1941). The removing party bears the burden of establishing federal jurisdiction over the controversy at issue. Winters v. Diamond Shamrock Chem. Co., 149 F.3d 387, 397 (5th Cir. 1998).  And, the removing party must prove that federal jurisdiction exists by a preponderance of the evidence. Young v. United States, 727 F.3d 444, 446 (5th Cir. 2013).  All ambiguities are construed against removal. Butler v. Polk, 592 F.2d 1160, 1164 (5th Cir. 1979).  Furthermore, all ambiguities are to be interpreted in favor of the non-removing party. Travis v. Irby, 326 F.3d 644, 648 (5th Cir. 2003).

Section 1446(b)(3) of the United States Code Title 28 provides: "[e]xcept as provided in subsection (c), if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446.

CPCC relies on federal question jurisdiction under the OCSLA as the basis for its second notice of removal. Federal question jurisdiction is generally governed by the well-pleaded-complaint rule, which provides that "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Caterpillar Inc. v. Williams, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). It does not suffice that the facts alleged in support of an asserted state-law claim would *also* support a federal claim. Beneficial Nat. Bank v. Anderson, 539 U.S. 1, 12, 123 S. Ct. 2058, 2065, 156 L. Ed. 2d 1 (2003) (emphasis added). In most removal cases brought pursuant to 1446(b)(3) based on the "other paper" exception, courts are determining if diversity jurisdiction has been established. Eggert v. Britton, 223 F.App'x 394, 397 (5th Cir. 2007). Only in rare circumstances have courts looked to "other paper" to establish federal question jurisdiction. Id. For instance, "other paper" may serve to show a plaintiff's state law claim that is preempted by federal law. Id. However, the "other paper" cannot be used to establish a new federal cause of action, but only to clarify the ambiguous nature of an existing claim. Id.

To constitute "other paper" under 1446(b)(3), the defendant must show that (1) the paper was a result of a voluntary act by the plaintiff and (2) it is sufficient to give the defendant notice of the changed circumstances that now support federal jurisdiction. S.W.S. Erectors, Inc. v. Infax, Inc.,

72 F.3d 489, 494 (5th Cir. 1996).  Significantly, the parties do not cite, nor has this Court found through its own research, any Fifth Circuit precedent establishing that a plaintiff's expert witness's testimony, responding to defense counsel's questioning, is the result of a voluntary act of the plaintiff for purposes of establishing federal question jurisdiction under 1446(b)(3).[1]  The Court has doubts as to whether the circumstances as alleged here, i.e. the statements of Greg Perkin, are properly considered the result of a "voluntary act" of the plaintiff, even though he is an expert offered by the plaintiff.  Primarily, the statements relied upon by CPCC came only in response to questions posed by counsel for the defendant and, in one instance, resulted after defense counsel presented Mr. Perkin with documents that CPCC previously created and produced to him for the first time during the deposition.  While these facts raise the Court's concern, the Court finds that it can decide this motion on other grounds and declines to rule on the parties' "voluntary act" arguments.[2]

Assuming *arguendo* that the testimony of Mr. Perkin establishes a voluntary act of the plaintiff, CPCC is still required to show that the testimony gave CPCC notice of the changed

---

[1] This Court recognizes that the court in Brinkley v. Universal Health Servs., Inc., 194 F. Supp. 2d 597, 600 (S.D. Tex. 2002) addressed a similar issue and declared that a plaintiff's expert testimony in response to questioning by *plaintiff's* counsel could be construed as a voluntary act for purposes of determining whether the deposition was "other paper."  However, the Court finds that the circumstances in this case are distinguishable based on the fact that defense counsel instigated the line of questioning, and, with regard to the expert's testimony pertaining the location of the *Century*, the demonstrative documents relied upon were generated by the defendant.  The Court also notes that the deposition taken in S.W.S. Erectors, Inc., was taken by opposing counsel as is the case here.  72 F.3d at 492.  However, that case did not concern the testimony of an expert, but the president of the plaintiff company.  See Id.  Therefore, the Court finds that case distinguishable to the facts here as well.  Significantly, both cases involve diversity jurisdiction, which is not at issue in this case.

[2] The Court also has doubts as to the timing of this removal action based on the reasoning in Harell v. Yokohoma Tire Corp., No. 3:08-CV-565, 2011 WL 1812785 (S.D. Miss. May 4, 2011).  In that case, the court declared, "...other Fifth Circuit cases have typically found 'other paper' to be documents, admissions, depositions, etc., which provided information the defendant could not easily obtain through investigation." Id. at *5. That court was not inclined to give the defendants a "new window" to remove based on tardy investigation of the facts.  Id.  Notably, the facts in this case have not changed since its outset.  CPCC only now brings this removal action based on evidence it alleges to have just recently acquired.  However, this case has been pending in state court and CPCC has been a party for more than three (3) years. (Rec. Doc. 9-1 at p. 2.)  While the Court does not decide the motion on these grounds, the Court questions whether removal under the timing at issue here is appropriate.

circumstances now giving rise to federal jurisdiction. Id. As previously stated, CPCC relies on the OCSLA to provide federal jurisdiction. "Congress enacted [the] OCSLA to provide a federal body of law to govern operations on the outer Continental Shelf." Hufnagel v. Omega Serv. Indus., Inc., 182 F.3d 340, 349 (5th Cir. 1999). To establish OCSLA jurisdiction, a party must show, among other elements, that the facts underlying the complaint occurred on an OCSLA situs. Barker v. Hercules Offshore, Inc., 713 F.3d 208, 213 (5th Cir. 2013). A situs may include a device "'permanently or temporarily attached to the seabed [of the OCS] ... for the purpose of exploring for, developing, or producing resources therefrom.'" Id. (citing 43 U.S.C. § 1333(a)(1)). Therefore, under the standards set forth above with regard to 1446(b)(3), CPCC must demonstrate that Mr. Perkin's testimony clarifies Freeman's claims such that the Court may determine that the facts giving rise to the complaint occurred on an OCSLA situs.

The two statements upon which CPCC relies to establish federal question jurisdiction are as follows:

> Q. Okay. Let's go to the conclusion section entitled the first reports, opinions and conclusions. Let me see if I can capture the central sentiment here. Citing 33 CFR 142, which pertains to the Outer Continental Shelf, it's your opinion because the oilfield operator authorized the use of asbestos drilling mud additives, the operator had a duty and responsibility to ensure that operations were in compliance with workplace safety and health regulations and to ensure the workplace was free from recognized hazards. Did I read that fairly?
> A. You did.
>
> Q. … Okay. Does it remain your opinion now?
> A. Yes, it does.
> Q. And is it going to remain your opinion when we get to trial?
> A. Yes.
>
> **AND**

> Q. Looking at this information, is there any – looking at the source information and I make it available to you in case you want to look at it, looking at this information, do you have any reason to doubt the Diamond M Century during the period encompassed within the time -- within the spreadsheet, which is 1974 through 1980, was engaged in drilling on the Outer Continental Shelf?
> A. I have no -- no reason to disbelieve it.

(Rec. Doc. 10-1, Exhibit 1 at p. 183-84, 200). In his motion, Freeman asserts that Perkin's response to defense counsel's second question, concerning the *Diamond M Century*'s location of drilling activity from 1974 to 1980, does not establish this Court's jurisdiction because it is not unequivocally clear as required in Bosky v. Kroger Tex., LP, 288 F.3d 208 (5th Cir. 2002). (Rec. Doc. 15 at p. 3). Notably, Freeman does not address the statements made in response to defense counsel's first question regarding the applicability of 33 C.F.R. 142 in his original motion or the reply. Nonetheless, the Court finds that the two statements do not clarify Freeman's claims as presenting a federal question, nor do they demonstrate that the facts underlying the complaint occurred on an OCSLA situs.[3]

To the contrary, the Court finds the answers are ambiguous. First, CPCC attempts to rely on Perkin's citation to 33 C.F.R. 142, which pertains to activity on the Outer Continental Shelf, contained in his expert report as establishing OCSLA jurisdiction. (Rec. Doc. 10 at p. 12). However, the Court is unsatisfied with the showing. The Court does not agree that an expert's citation to a C.F.R. regulation that applies to activity on the Outer Continental Shelf establishes or clarifies the proposition that the facts alleged in the complaint occurred specifically on an OCSLA

---

[3] The Court notes that it does not address Freeman's argument under Bosky as that case does not address federal question jurisdiction but is case about diversity jurisdiction. Therefore, the court does not adopt the requirement that the "other paper" be "unequivocally clear" as applying to federal question cases under 1446(b)(3). While the Fifth Circuit has not applied this standard in the federal question context, the Court finds that such a standard may be helpful when determining if a statement clarifies an ambiguous claim in the complaint.

situs. Considering Perkin's testimony coupled with the fact that, in the same deposition, he declared that he had no knowledge of whether the *Century* was in fact engaged in activity on the Outer Continental Shelf, CPCC has not met it burden with regard to the first statement. (Rec. Doc. 10-1 at p. 169, 11-16).

Perkin's second statement alleged to confer federal jurisdiction, "I have no – no reason to disbelieve it," came in response to evidence created by CPCC and provided to Perkin, for the first time, at the deposition. (Id. at p. 200). The statement neither affirms nor denies that the *Century* was engaged in activity on the Outer Continental Shelf, and, moreover, it is far too amorphous to demonstrate any definite location of where the alleged facts occurred. The Court does not view favorably defendant's strategy of luring an expert witness to admit to "facts,"or simply offer no contest to defense counsel's assertions, of which he has no independent knowledge, in an effort to obtain federal jurisdiction.

In sum, CPCC attempts to rely on statements that do not relate to Freeman's asserted claims nor do they aid in clarifying any of the facts alleged in the complaint. Additionally, the statements contradict Mr. Perkin's affirmative representation that he had no knowledge of the location. Therefore, viewing all ambiguities against removal and in favor of the non-removing party, the Court finds that CPCC has not met its burden of establishing that removal is appropriate under these circumstances.

### III. Conclusion

For the reasons stated herein, CPCC has not met its burden of showing that removal is appropriate. Accordingly,

**IT IS ORDERED** that the case be **REMANDED** to the Civil District Court for the Parish of Orleans, State of Louisiana.

New Orleans, Louisiana, this 18th day of December 2014.

_____
**KURT D. ENGELHARDT**
**United States District Judge**